UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

BLC LEXINGTON SNF, LLC d/b/a        )
BROOKDALE RICHMOND PLACE SNF,       )
et al.,                             )
                                    )         No. 5:19-CV-376-REW-MAS
        Plaintiffs,                 )
                                    )
v.                                  )         OPINION & ORDER
                                    )
JIM CRAIG, as Administrator of the Estate )
of Dennis Ray Craig,                )
                                    )
        Defendant.                  )

                        *** *** *** ***

This case centers on the late Dennis Craig's stays at a Lexington skilled nursing facility. Before the Court are Defendant's motion to dismiss, Plaintiffs' motion to compel arbitration and enjoin Defendant from continuing his state action against them, and Defendant's motion to strike the motion to compel. For the following reasons, the Court rejects the dismissal effort, denies the motion to strike, compels arbitration, and enjoins Defendant from litigating in the underlying state court proceeding.

## I.      BACKGROUND

On August 16, 2019, Dennis Ray Craig[1] filed an action in the Fayette Circuit Court complaining of the care he received at Brookdale Richmond Place SNF. DE 1-2. Craig sued the facility where he was a resident, numerous entities involved "in the ownership, operation, management, control, licensing and/or service provided for the facility during [Craig's]

---

[1] Craig died during the pendency of the state court action. *See* DE 7 ¶¶ 4–5 (First Amended Complaint "add[ing] Jim Craig, as Administrator of the Estate of Dennis Ray Craig, as the proper Defendant"). The Court throughout refers to Jim Craig as Defendant and Dennis Ray Craig as Craig.

residency," and the alleged alter ego(s) of the facility. *See id.* ¶¶ 5–19, 25. Craig also joined several individual managers or officers of the named entities and several facility administrators. *See id.* ¶¶ 20–24, 26–28. The complaint charged all targets with negligence and violations of both the long-term care residents' rights and the Consumer Protection Act, and further sought punitive damages. *See id.* ¶¶ 53–55.[2]

The state court defendants answered and asserted that Craig's claims were subject to a binding arbitration agreement. DE 15-3 at 2. Several days later, four of the entity defendants (collectively, Brookdale) in the state court matter initiated this action as federal plaintiffs. *See* DE 1; DE 7.[3] The complaint alleged that, in order to be admitted to Brookdale Richmond Place SNF, Craig had signed an admission agreement and that the agreement included an arbitration clause. DE 7 ¶¶ 6, 17. The clause states, in relevant part:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Provider, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

DE 1-1 at 11–12 (emphasis in original). Relying on this clause, Brookdale sought to compel arbitration and enjoin Defendant from pursuing his claims in state court. *See* DE 7 ¶¶ 28–36. Brookdale asked the Court to stay this matter until the arbitration concludes. *See id.* ¶ 6.

---

[2] These counts span more than ten pages (and are far beyond three paragraphs), but there are typographical errors in the paragraph numbers; for example, Count II concludes with paragraph 64, but Count III begins with paragraph 27. There is no Count VII.

[3] The First Amended Complaint (DE 7) is the operative one.

Defendant moved to dismiss the federal action, citing Rules 12(b)(1) and 12(b)(6) and arguing that the admission agreement is ineffective and unenforceable. *See* DE 15 at 3–4. The dismissal motion also requested that the Court abstain from exercising jurisdiction and dismiss the federal action in favor of the underlying state case. *See id.* at 8. Brookdale then moved to compel arbitration and enjoin Defendant from continuing to litigate the claims. *See* DE 19. Defendant responded and separately asked the Court to strike Brookdale's motion to compel. *See* DE 20; DE 21. The matter is (more than) fully briefed and ripe for consideration. *See* DE 17; DE 18; DE 21; DE 23; DE 24; DE 25.

* * * * *

First, some housekeeping. The Court begins by addressing Defendant's motion to strike (DE 20). In Defendant's view, Brookdale's motion to compel arbitration and enjoin Defendant is not a motion at all; rather, the filing is an untimely supplemental response to the motion to dismiss. *See* DE 20 at 2. Defendant notes the similarity between Brookdale's response (that is, the one styled as a response) and Brookdale's motion to compel. *See id.* at 3–4 ("In fact, many of the arguments in Plaintiff's Motion to Compel are directly lifted, word-for-word, from their own Response to Defendant's Motion to Dismiss [DN 17]."). For support, Defendant cites LR 7.1(c) (imposing a twenty-one-day response deadline) and attaches authority standing for the proposition that the Court may strike untimely responses. *See* DE 20 at 2–3; DE 20-1; DE 20-2; DE 20-3; DE 20-4; DE 20-5.

According to Brookdale, another rule controls: Rule 7(b), which provides that "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). *See* DE 24 at 1–2. Brookdale observes that a ruling on Defendant's motion to dismiss would maintain the case but not result in an order compelling arbitration. *Id.* Additionally, this same sequence—a motion to dismiss a complaint seeking to enforce an arbitration agreement followed by a motion to compel

3

arbitration—has occurred in other cases. *See id.* at 2 (citing *BLC Lexington SNF, LLC v. Oatis*, Civil Action No. 5:19-284-DCR, 2019 WL 6221006 (E.D. Ky., November 20, 2019); *Brookdale Senior Living, Inc. v. Caudill*, Civil Action No. 5:14-098-DCR, 2014 WL 3420783 (E.D. Ky., July 20, 2014)).

At bottom, the parties' skirmishing relates to one central issue: whether this dispute is arbitrable. Ruling on Defendant's motion to dismiss alone would have prompted the Court to answer that question. In a sense, Defendant's and Brookdale's motions are opposite sides of a coin, turning on the Court's resolution of the arbitrability question. But, perhaps Brookdale is correct to point out that such a ruling would not *necessarily* have yielded the sought compulsion and injunctive relief. In any event, there is nothing procedurally improper about Brookdale requesting, by motion, an order that naturally flows from a ruling on the validity of the agreement.[4] Repeating substantial portions of one's arguments in various filings—motions and responses—does not make for the most economical litigation or pleasurable reading experience,[5] but nor does it here provide justification to strike Brookdale's filing as untimely. Accordingly, the Court denies Defendant's motion to strike and below considers (and ultimately grants) Brookdale's motion to compel.

---

[4] Defendant complains about the timeliness of the filing if construed as a response. He does not, however, assert waiver, which could persuade the Court (under certain circumstances) to reject a belated request for arbitration. *See Solo v. UPS Co.*, 947 F.3d 968, 974–75 (6th Cir. 2020) ("[A]lthough 'we will not lightly infer a party's waiver of its right to arbitration,' we may find waiver if a party (1) 'tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delay[s] its assertion to such an extent that the opposing party incurs actual prejudice."'"). Brookdale plainly has not waived its right to arbitration.
[5] Defendant may be equally guilty on this score. *Compare* DE 15, *with* DE 21.

## II.    STANDARDS

### A.  Rule 12(b)(1)

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

### B.  *Colorado River* Abstention

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]'" *Colo. River Water Conservation Dist. v. United States*, 96 S. Ct. 1236, 1244 (1976). But, "[c]onsiderations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (internal citation omitted). "[A] federal court should rarely refrain from exercising its lawful jurisdiction: only in 'exceptional circumstances' where a 'careful balancing' of important factors, 'heavily weighted in favor of the exercise of jurisdiction,' yields the 'clearest of justifications.'" *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 388 (6th Cir. 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 937 (1983)).

> [I]n deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider such factors as (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the   federal forum is less

convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained.

*Romine*, 160 F.3d at 340–41. Also relevant are "whether the source of governing law is state or federal, . . . the adequacy of the state court action to protect the federal plaintiff's rights, . . . the relative progress of the state and federal proceedings, . . . [and] the presence or absence of concurrent jurisdiction." *Id.* (internal citations omitted).

### C. Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). The Court evaluates and tests the well-pleaded Complaint contents. *Peterson v. Ostrander*, No. 17-2160, 2018 WL 4739692, at *2 (6th Cir. Apr. 6, 2018) ("[T]he court must confine its analysis to the pleadings and accept all well-pleaded allegations as true.").

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of

an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir.

2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

The usual 12(b)(6) standard is less straightforward as applied to a motion to compel

arbitration. *See Powers v. Charles River Labs., Inc.*, No. 16-cv-13668, 2017 U.S. Dist. LEXIS

160591, at *12 (E.D. Mich. Sept. 29, 2017) ("Federal courts analyze motions to compel arbitration

under different federal procedural standards, including Fed. R. Civ. P. 12(b)(1) for lack of subject

matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 56 for

summary judgment, depending upon the facts and posture of the case.").

> [W]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue. If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit.

*Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "[T]he court is obligated, assuming

the issue cannot be determined from the face of plaintiff's complaint, to consider affidavits and

other evidence of a type that would be submissible at the summary judgment stage." *Powers*, 2017

U.S. Dist. LEXIS 160591, at *12–13; *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule

12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56."). Both sides have liberally

operated outside the boundaries of the pleadings, inviting analysis consistent with Rule 56. Neither

side claims the need for discovery on the pertinent issues.

### D.  Motion to Compel Arbitration and Enjoin State Court Proceedings

"The [Federal Arbitration Act] allows '[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration' to seek an order compelling arbitration and permits a stay of other proceedings if claims are referred to arbitration." *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "[A] district court may enjoin state-court proceedings after compelling arbitration, and that activity does not violate the Anti-Injunction Act." *Caudill*, 2014 WL 3420783, at *10 (citing *Great Earth Cos.*, 288 F.3d at 893.

## III.   ANALYSIS

### A.  Subject-Matter Jurisdiction

Craig cites Rule 12(b)(1) but nowhere actually suggests that the Court lacks subject-matter jurisdiction. *See* DE 15. Instead, the motion discusses jurisdiction only within the context of abstention. *See id.* at 8–12. Nor does Brookdale's response address this asserted but unargued dismissal basis. *See* DE 17 at 3–4.

 "District courts may exercise diversity jurisdiction over 'civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.'" *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 468 (6th Cir. 2019) (quoting 28 U.S.C. § 1332(a)(1)). Here, the Court perceives no jurisdictional defect.

First, the operative complaint adequately alleges complete diversity between the parties. *See* DE 7 ¶¶ 7–12. The citizenship of BLC Lexington SNF, LLC, for diversity purposes, depends on the citizenship of its members. *See Delay v. Rosenthal Collins Grp., Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("[A] limited liability company has the citizenship of each of its members."). BLC's sole member, American Retirement Corporation, is joined as a Plaintiff in this action. The complaint alleges that American Retirement Corporation is a Tennessee citizen, which means that BLC shares its Tennessee citizenship. *See* DE 7 ¶¶ 7–8. The other corporate Plaintiffs are likewise citizens of Tennessee by virtue of their state of incorporation and principal place of business. *See id.* ¶¶ 9–10. Plaintiffs allege that Defendant is a Kentucky citizen. *See id.* ¶ 11.[6]

Second, the complaint alleges that the underlying claims—those which Brookdale seeks to compel to arbitration—cross the jurisdictional threshold. *See id.* ¶ 13. Brookdale argues that it is "facially apparent" the claims satisfy the amount-in-controversy requirement, noting that Defendant "seeks compensatory and punitive damages as well as costs." *See id.* The state court complaint lists nine claims against numerous entities and individuals. *See* DE 1-2. The asserted injuries include "bedsores, UTIs, weight fluctuation, skin insufficiencies, pneumonia, a collapsed lung, and illegal discharge." *See id.* ¶ 49. The complaint further alleges "pecuniary injury including overcharging and theft of personal items," as well as "unnecessary loss of personal dignity, pain and suffering, degradation, emotional distress and hospitalization." *See id.* ¶¶ 50–51. The range and gravity of injuries suggests (and Defendant does not dispute) that the amount-in-controversy requirement has been satisfied. Indeed, the state complaint confirms the amount. DE 1-2 ¶ 37 (claiming in excess of $75,000).

---

[6] As "the legal representative of the estate of a decedent," Defendant has the same citizenship as Craig, who Plaintiffs previously alleged was a Kentucky citizen. *See* 28 U.S.C. § 1332(c)(2); DE 1 ¶ 6.

For these reasons, the Court concludes that diversity-based subject-matter jurisdiction exists[7] and rejects the baseless 12(b)(1) ground for dismissal.

## B. *Colorado River* Abstention

Defendant urges the Court to decline to exercise jurisdiction based on federalism concerns. *See* DE 15 at 8–12. Per Defendant, the state court action parallels this one, and six of the eight relevant factors favor abstention. *Id.* Brookdale sees it differently; Plaintiffs challenge each of the six factors relied upon by Defendant and oppugn abstention. *See* DE 17 at 7– 14.

"Before the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." *Romine*, 160 F.3d at 339. This requirement is met "if the two proceedings are substantially similar." *Id.* at 340 (internal quotation omitted). "There is also no requirement that the parties in the state court proceedings be identical to those in the federal case." *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004). "However, cases are not considered parallel if there is an issue that would not be resolved by the state court upon the completion of the state court action." *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 686 (W.D. Ky. 2010).

Here, Defendant contends, and Brookdale does not contest, that the two proceedings are parallel. The parties in the two actions are not identical, but Plaintiffs in this case are all joined as defendants in the state court proceeding. Both actions involve or center on allegations relating to the care provided to Craig while he was a Brookdale resident. And, because Brookdale raised the arbitration agreement as an affirmative defense in response to Craig's complaint, the state court would be required to resolve this issue. *See Kopacz*, 714 F. Supp. 2d at 686. For these reasons, the

---

[7] Plaintiffs also argued that 9 U.S.C. § 4 provides a basis for federal jurisdiction. However, the FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1402 (2008).

cases are sufficiently similar to satisfy the threshold inquiry and allow the Court to consider whether *Colorado River* abstention should apply.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist.*, 96 S. Ct. at 1244. The Court, again, considers

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction.

*Bates*, 122 F. App'x at 807. "The 'most important' factor courts are to consider is whether there exists a 'clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication.'" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467–68 (6th Cir. 2009) (quoting *Colo. River Water Conservation Dist.*, 96 S. Ct. at 1247). There assuredly is no such policy in the FAA, which instead displays a strong federal policy favoring arbitration. *Id.*; *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 383 F. App'x 517, 520 (6th Cir. 2010) ("All doubts regarding the arbitrability of an issue must be resolved in favor of arbitration."). Courts in this district, reviewing analogous cases (involving the same federal court Plaintiffs) have found abstention unwarranted under like circumstances. *See Oatis*, 2019 WL 6221006, at *12–13; *Caudill*, 2014 WL 3420783, at *6–7. Those well-crafted decisions are persuasive.

This case does not call for *Colorado River* abstention. As in the cases above, the most important factor—the avoidance of piecemeal adjudication—is absent; this sharply supports exercising jurisdiction because of the federal policy favoring arbitration. The first two factors are not in play and thus counsel against abstention. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001). The state court has not assumed jurisdiction over any res or property, and the

11

two courts are located in the same city. Although the state court acquired jurisdiction first, very little time passed before Brookdale initiated this action; thus, "the minimal temporal delay is insignificant." *See id.* With respect to the relative progress of the proceedings, Brookdale represents without opposition that "[t]he state court matter has not proceeded beyond the initial pleadings." DE 17 at 11. With respect to the fifth factor, the law governing the question of arbitrability is largely federal, despite the fact that state law applies to the underlying dispute and the FAA borrows some state principles regarding contract revocation. *PaineWebber, Inc.*, 276 F.3d at 208; *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1266 (5th Cir. 1994) ("However, in this federal case—concerning *only* whether the case should be submitted to arbitration under § 4 of the FAA—federal law provides the rule of decision on the merits.").

On the other hand, the sixth factor—the adequacy of the state court action to protect the federal plaintiff's rights—supports abstention because the FAA is "binding on state courts that interpret contracts involving interstate commerce." *PaineWebber, Inc.*, 276 F.3d at 208. The state court proceeding thus adequately protects Brookdale's rights. The eighth factor also slightly favors abstention here because there is concurrent jurisdiction. But, "the eighth factor is insufficient to justify abstention despite concurrent jurisdiction in state and federal court where a congressional act provides the governing law and expresses a preference for federal litigation." *PaineWebber, Inc.*, 276 F.3d at 208–09. As discussed above, the FAA conveys that preference. In all, this action does not involve "exceptional circumstances, the clearest of justifications" to convince the Court to surrender jurisdiction. *See id.* (quoting *Moses H. Cone Mem'l Hosp.*, 103 S. Ct. at 942). The Court will not abstain.

### C. Failure to State a Claim

"Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "The court 'must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'" *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009). Parties sometimes disagree about "threshold arbitrability questions—that is, whether their arbitration agreement applies to the particular dispute." *Henry Schein, Inc.*, 139 S. Ct. at 527. When parties agree by contract to delegate this threshold question to an arbitrator, "the courts must respect the parties' decision as embodied in the contract." *Id.* at 528.

"Because arbitration agreements are fundamentally contracts, [a court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *GGNSC Louisville St. Matthews LLC v. Badgett*, 728 F. App'x 436, 440 (6th Cir. 2018).[8] "Under [Kentucky law and the FAA], a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping v. Beverly Enters.*, 376 S.W.3d 581, 590 (Ky. 2012). Interpretation begins with the plain language of the contract. *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016). "'[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to

---

[8] The parties apply Kentucky law without undertaking a choice-of-law analysis. This squares with the agreement. DE 1-1 ¶ X.E. Further, the Court follows suit, as "Kentucky's choice-of-law rules favor the application of its own law." *See Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 574 (6th Cir. 2019).

extrinsic evidence." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation omitted). If there is an ambiguity, the Court discerns "the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written." *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954).

Here, the Court finds that a valid arbitration agreement exists and applies between the parties. Accordingly, Defendant is not entitled to dismissal of this action. Each of Defendant's contrary arguments is without merit.

### 1. Duration

Defendant argues that the admission agreement containing the arbitration clause terminated upon Craig's discharge from the facility. *See* DE 15 at 4–5.[9] Brookdale counters by pointing to provisions purporting to bind third parties (including representatives and administrators) and by highlighting that the arbitration clause, by its plain text, survives the resident's death. *See* DE 17 at 5–6.[10] Brookdale further notes that this District has rejected Defendant's exact argument in another case involving the same admission agreement. *See id.* at 4–5 (discussing *Oatis*, 2019 WL 6221006).

The Court fully agrees with the analysis in *Oatis*. Although the contract does suggest in the initial term provision that the entire agreement continues only until discharge, the specific provision relating to the duration of the arbitration clause refutes that reading. *Oatis* interprets the agreement as a whole (as Kentucky law dictates) and harmonizes the two provisions, explaining

---

[9] The "term" provision of the agreement explains that "[t]he term of this Agreement shall commence on the date of admission, and continue in full force and effect until the Resident is discharged or transferred from the Provider and all Resident's personal effects are removed from the Resident's room." DE 1-1 at 1.

[10] The agreement states that "[t]he Arbitration Provision shall survive your death."

that the separate, indefinite "term" provision applies only to the arbitration clause. *See Oatis*, 2019 WL 6221006, at *8–9. It strains common sense to suppose that the arbitration clause survives death but ceases to bind the parties during the period between discharge and death. By the plain terms of the arbitration clause, the provision remains operative today and binds Defendant.[11]

### 2. Scope

On Defendant's read, the arbitration clause, by its terms, does not apply to some of the claims in the underlying state proceeding—namely, involuntary transfer. *See* DE 15 at 6–8. Brookdale explains that the carve-out actually contemplates an appeal of an administrative agency decision to involuntarily discharge a resident; Kentucky regulations provide for a notice and appeal process. *See* DE 17 at 6–7. Per Brookdale, Defendant's lawsuit, which includes a count for violation of resident's rights (one of which relates to transfer and discharge) does not fall within this exception. *See id.*

The Court is unpersuaded by Defendant's argument for two reasons. First, the arbitration clause expressly states that an arbitrator, not a court, will decide issues "regarding interpretation [and] scope." *See* DE 1-1 at 11–12. This language "clearly and unmistakably" indicates that the parties delegated the "'gateway' questions of 'arbitrability.'" *See Henry Schein, Inc.*, 139 S. Ct. at 529. Second, even if this question were for the Court, Brookdale correctly notes that "Defendant's Complaint is for money damages for alleged violations of statutory rights provided to long-term

---

[11] Of course, the arbitration clause encompasses disputes over involuntary transfer or eviction. That carve-out would not be needed if discharge ended the agreement anyway. Further, Defendant's construct would put the power to vanquish the arbitration compact in each party's unilateral hands. For instance, a Medicaid or Medicare-based patient can terminate "immediately . . . upon written notice." DE 1-1, ¶ V.A.1-3. Neither the whole contract nor common sense suggests that the arbitration clause—one meant to govern all claims arising from any stay at the Provider—could lapse so easily. The Court, when accounting for the full scope and structure of the contract finds Defendant's proffered reading facile and implausible.

care residents." *See* DE 17 at 6. Accordingly, there is no support for the position that Defendant's claims fall outside the scope of the arbitration clause.[12]

### 3. Arbitration as a Condition of Admission

Defendant contends that the admission agreement violates 42 C.F.R. § 483.70(n)(1) because admission to the facility was conditioned on acceptance of the binding arbitration provision. *See* DE 15 at 12–13. According to Brookdale, no version of this regulation was legally effective at the time Craig signed the admission agreement. *See* DE 17 at 14–17; DE 23 at 11–12 (explaining history of amendments and referencing federal injunction in effect from November 7, 2016, until September 16, 2019). Defendant does not quibble with the regulatory history; instead, he observes that facilities must comply with the provision in order to participate in the Medicare and Medicaid programs and that the injunction merely prohibited the agency from withholding funds based on a violation of the enjoined regulation. *See* DE 15 at 12–13; DE 21 at 14.

The Court does not read the regulation to invalidate the parties' agreement. All agree that 42 C.F.R. § 483.70(n)(1) was not operative, per *Am. Health Care Ass'n v. Burwell*, 217 F. Supp. 3d 921 (N.D. Miss. 2016), at the time Craig signed the agreement containing the arbitration clause. Even if the regulation were in effect at the time, it is not clear that excusing a private party from a contractual obligation is the appropriate remedy; the regulation relates only to eligibility for federal funding. *See Northpoint Health Servs. v. United States Dep't of Health & Human Servs.*, 438 F. Supp. 3d 956, 966-67 (W.D. Ark. 2020)(discussing new but comparable rule: "[T]he . . . Rule places requirements on the use of arbitration agreements that do not undermine the validity or

---

[12] The state complaint includes a laundry list of statutory and regulatory references. One, cited by Defendant, says a right violated pertained to transfer. DE 1-2, ¶ 39(b). The Court has scoured the lengthy pleading for any factual allegations linked to the statutory right and sees none. Defendant discusses no such facts. If there is such a claim, the arbitrator can segregate it as appropriate in her handling of the dispute.

enforceability of the agreement when it comes before a court. Instead, the Rule only establishes conditions of the facility's receipt of federal subsidies.").

### 4. Unconscionability

According to Defendant, the arbitration clause is both procedurally and substantively unconscionable. *See* DE 15 at 14–16. Procedurally, the clause impermissibly prohibits the recovery of attorneys' fees, and substantively, the clause is broad enough to cover intentional torts. *See id.* at 15–16. Brookdale contests this characterization, averring that the clause is clear and "neither unreasonable nor grossly favorable to one side." *See* DE 17 at 18. Brookdale notes that arbitration provides Defendant an opportunity to present all claims and that any unconscionable clause is severable from the rest of the provision. *See id.* (quoting severability provision at DE 1-1 at 15).

> A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. The doctrine of unconscionability has developed as a narrow exception to this fundamental rule.

*Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Louisville Bear Safety Serv. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978) (quoting Black's Law Dictionary 1694 (4th ed.)). In *Valued Services of Kentucky, LLC v. Watkins*, 309 S.W.3d 256 (Ky. Ct. App. 2009), the Kentucky Court of Appeals deemed unconscionable an agreement that would have required a customer who received a cash advance to arbitrate his claim for false imprisonment. *Watkins* summarized its reasoning as follows:

> [T]he arbitration provision is unconscionable because it encompasses an intentional tort *with so little connection to the underlying agreement* that it could not have been foreseen by Watkins when he signed that agreement.

*Id.* at 265 (emphasis added). As with arbitrability and scope, parties may delegate to an arbitrator issues relating to unconscionability. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2779 (2010) ("Section 2 [of the FAA] operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce."); DE 1-1, ¶ VIII.A.1.

Here, Defendant does not confront the fact that the agreement delegated the threshold question of unconscionability to an arbitrator. *See* DE 1-1 at 12. As a result, Defendant must show that *delegation* is unconscionable. *See Jackson*, 130 S. Ct. at 2779 ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). However, his arguments are not so tailored. *See* DE 15 at 15 ("Mr. Craig would have to cover any and all attorneys' fees *for any action* brought despite whether it was a contractual dispute, any level of tort, or a breach in any statutory duty.") (emphasis added). Because the agreement delegated this issue, the question is whether the clause is unconscionable insofar as it requires Craig to pay his own attorney to arbitrate the threshold question of unconscionability. As in *Jackson*, Defendant's showing is inadequate. *See Jackson*, 130 S. Ct. at 2780 ("[T]he unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments *specific to the delegation provision*[.]") (emphasis added).

In any event, were the question for the Court, unconscionability would not invalidate the arbitration clause. Assuming without deciding that the restriction on attorneys' fees is

unconscionable[13], this provision would be severable from the rest of the arbitration clause. *See Brookdale Senior Living, Inc. v. Stacy*, 27 F. Supp. 3d 776, 789–90 (E.D. Ky. 2014) (discussing and rejecting comparison to *Abner*, which had found arbitration agreement substantively unconscionable, and deeming severable the agreement to arbitrate); DE 1-1. ¶ VIII and *id.* A.15 (both outlining severability in context of arbitration clause). Moreover, the analogy to *Watkins* is inapposite. In that case, the store manager locked the customer in her office and refused to let him leave until he paid his loan; the customer ultimately called 911 to report being held against his will. *Watkins*, 309 S.W.3d at 258–59. This case plainly does not involve allegations of wrongdoing "with so little connection to the underlying agreement." *See id.* at 265. Defendant posits no intentional torts. The Court views the pleaded claims as reasonably foreseeable to the parties at the time of contracting. Because the parties agreed that an arbitrator would decide questions of unconscionability and because Defendant has not shown that delegation itself was unconscionable, this defense fails.

### 5. Condition Precedent

Defendant claims that the agreement is not enforceable for failure of a condition precedent. *See* DE 15 at 16–18. The challenged condition relates to "the necessary qualifications and/or licenses required by federal, state, and local laws and regulations to provide skilled nursing care in this state." *See id.* at 17. However, Brookdale admitted in its answer that it holds a license from the Commonwealth of Kentucky to operate the facility. *See* DE 17 at 19.

At the threshold, the Court doubts that the identified language, phrased in III.B. as a warranty, creates a condition precedent. "A condition is *an event*, not certain to occur, which must

---

[13] Of course, there typically would not be (and Defendant does not allege) a statutory fee provision on a threshold issue of contract construction.

occur, unless its non-occurrence is excused, before performance under a contract becomes due."
Restatement (Second) of Contracts § 224 (1981) (emphasis added); *see United Ins. Co. of Am. v.
Commonwealth*, No. 2013-CA-000612-MR, 2014 Ky. App. Unpub. LEXIS 1046 (Ky. Ct. App.
Aug. 15, 2014) (quoting Restatement definition). Under certain circumstances, securing a license
may constitute such an event, but there is no dispute here that Brookdale had the required license.
For example, the underlying action does not seek to recover resident charges unwittingly paid to
an unlicensed facility.

Furthermore, the Court rejects the circular attempt to avoid the arbitration clause.
Defendant appears to argue, based on the Complaint's allegations alone, that Brookdale, by
rendering sub-standard care, lacked "the necessary qualifications and/or licenses" and that this
failure renders the entire contract unenforceable. The Court declines to hinge contract validity on
Defendant's post-formation claim that Brookdale failed to perform to its warranted standard.

### 6. Capacity

Finally, Defendant submits that Craig lacked capacity at the time he signed the admission
agreement. *See* DE 15 at 18–19. Defendant notes that he acted as Craig's attorney-in-fact from
2012 until Craig's death and that Craig experienced "episodes of delirium and confusion" during
his stay at Brookdale Richmond Place. *See id.* at 18; DE 15-4. Defendant offers a smattering of
facility documentation and medical records to substantiate these claims. *See id.*; DE 15-5; DE 15-
6. In response, Brookdale focuses on Craig's capacity at the time of the agreement; the medical
records pertain to a different time period.[14] *See* DE 17 at 20. Additionally, per Brookdale

---

[14] The facility's care plan reflects "delirium or an acute confusional episode" occurring once in
October 2018 and again in January 2019. *See* DE 13. A medical record from UK Chandler Medical
Center relates to the October 2018 episode. *See* DE 14. Craig signed the admission agreement on
May 7, 2018. *See* DE 1-1.

submissions, Craig obtained a perfect score on the cognitive assessment completed soon after his admission to the facility. *See id.* at 21. Brookdale directs the Court to consider cases in the Eastern and Western Districts of Kentucky where nursing home residents asserting lack of capacity were deemed bound by arbitration agreements. *See id.* at 21–23.

Under Kentucky law, "there is always the presumption of sanity and capacity to contract." *Holcomb v. Brashears*, 273 S.W.2d 810, 811 (Ky. Ct. App. 1954). "[E]very contracting party 'must be treated as . . . of sound mind until the contrary is shown by clear and convincing evidence.'" *Estate of Adams v. Trover*, 547 S.W.3d 545, 554 (Ky. Ct. App. 2018) (internal quotation and emphasis omitted). "[A] transaction sought to be annulled with [a person not adjudged mentally unsound] will not be voided unless the condition be so obvious that any and all ordinarily prudent minded persons would observe the defect." *Everett v. Downing*, 182 S.W.2d 232, 236 (Ky. 1944). "There must be some direct proof sufficient to convince the minds of the court that at the time the transactions were entered into that he did not and could not understand his acts." *Revlett v. Revlett*, 118 S.W.2d 150, 155 (Ky. 1938). "[U]nsoundness of mind to avoid a contract must relate to the immediate time when the contract was made." *Jefferson Standard Life Ins. Co. v. Cheek's Adm'r*, 80 S.W.2d 518, 520 (Ky. 1934).

Here, Defendant has not shown by clear and convincing evidence that Craig lacked capacity at the time of the arbitration agreement. The Court begins with the presumption that Craig had capacity to contract. As proof of unsoundness of mind, Defendant points to a power of attorney,[15] executed six years before the agreement, and facility and medical records, showing

---

[15] Defendant suggests that the power of attorney indicates that Craig lacked capacity and complains that Brookdale negotiated the agreement with Craig, not Defendant. However, Craig's decision to sign a power of attorney does not in any way determine his mental capacity in general and is distant in time from when he signed the arbitration agreement. Logically and legally, of course, Craig would have had to have capacity in 2012 to enter a valid power of attorney. The existence of the

21

"delirium or an acute confusional episode" five months after Craig was admitted. There is no evidence relating to the "immediate time when the contract was made." *See id.* But, just seven days later, Brookdale's intake assessment reveals a perfect score on an assessment that gauged (among other things) Craig's speech clarity, ability to understand others and make himself understood, and recall. *See* DE 17-2. Of course, this assessment is not conclusive proof that Craig in fact understood the terms of the arbitration agreement. But, the contrary arguments of Defendant, who bears the burden, do not pass muster.

A few more salient notes: Defendant seemingly ignores that Craig filed the state lawsuit on his own behalf in August 2019—this cuts sharply against the idea that Craig continuously lacked capacity from 2012 through his death. Further, Craig signed readmission documents (incorporating again the basic Admission Agreement) on several occasions after the original May 2018 execution. *See, e.g.,* DE 1-3 (2/16/2019); DE 1-4 (3/18/2019). Defendant does not document any capacity proof at the specific points of any agreement entries by Craig (the original or any subsequent re-admission dates). The Court sees no genuine dispute, as to capacity, on the record before it.  Defendant faced and failed to carry the onerous burden.

### D.  Motion to Compel Arbitration

Brookdale requests an order compelling arbitration and enjoining Defendant from continuing to litigate the state court matter. *See* DE 19. For support, Brookdale largely restates the previous arguments—included in its response opposing Defendant's motion to dismiss—going to the enforceability of the arbitration clause. *See* DE 19-1 at 5– 21. Brookdale further describes the Court's authority to enjoin Defendant from pressing his claims in any forum other than binding

---

power is a tool designed to endure incapacity, but Craig could not have executed the document without capacity at the time.

arbitration. *See id.* at 21–22. In response, Defendant largely lifts the substance from his earlier dismissal motion. *Compare* DE 15, *with* DE 21.

The requested injunction is appropriate to protect the final judgment of the Court on the enforceability of the arbitration agreement. *See Great Earth Cos.*, 288 F.3d at 893; *Oatsis*, 2019 WL 6221006, at *15. Having concluded that the arbitration clause is binding and applies to the claims asserted, the Court will enjoin Defendant from pursuing the claims in the state proceeding.

## VI.   CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. The Court **DENIES** Defendant's motion to dismiss (DE 15);

2. The Court **GRANTS** Brookdale's motion to compel and enjoin Defendant (DE 19);

3. The Court **DENIES** Defendant's motion to strike (DE 20);

4. Pursuant to the Federal Arbitration Act, the Court **COMPELS** Defendant to submit the claims now pending in Fayette Circuit Court to arbitration under the terms of the arbitration agreement. Further, the Court **ENJOINS** Defendant from further pursuing the claims in state court; and

5. The Court **STAYS** this matter until arbitration is concluded. The parties are directed to file, **by November 23, 2020**, a joint status report regarding the progress of arbitration.

This the 13th day of August, 2020.

Signed By:

*Robert E. Wier*

**United States District Judge**